All rise. This court is now in session. Please be seated. Mr. Clerk, will you call the next case, please? 3-15-0319, Brian Falls, attorney by Larry Bird v. Silver Cross Hospital & Medical Centers, employed by Brian Webster. Good afternoon, your honors, counsel. Your honor, I believe that we have a relatively simple issue here. We have a facility agreement that was entered into by the hospital. That hospital, that agreement clearly states what the situation is between a patient who comes in and the hospital. In section 6.4, 6.7, 6.8, it is clear that once the health insurance company pays the hospital the discounted amount to which they contracted for, that that is payment in full. But that's the agreement between the insurance carrier and the hospital. And the unfair practices are between what happens with the agreement between the patient and the hospital. Initially, your honor, that's correct. But as part of our argument, we believe that the plaintiff in this case and the putative class, but there has been no class certified, we never got to that issue, is definitely a third-party beneficiary of the facility contract. But there is an argument on that because of the language of the contract. But the language of the consent form is not disputed and the consent form does provide that the patient is going to pay the PPO discounted balance if they have an insurance carrier that is entitled to a PPO discount. That's correct. The consent form says one thing. The facility agreement says something else. So when the patient goes in there to be treated, in this case, Dr. Falls, who was injured, he would have no way of knowing or having any informed consent when he signed that consent form that there is a facility agreement between the insurance company and the hospital and that the consent form is totally contradictory and opposite of what the facility agreement says. Nobody would know that. No way that they would know that. And although the consent form states in part what your honor just said, the facility agreement says something totally different. It's deceptive. It's omission. It's a concealment. It's clear. It can't be disputed. So when they say that we can file a lien in the consent form and they say that you're going to be responsible for the bill in its entirety, the facility agreement says something absolutely different. It's not just the facility agreement that says something different. It's the language in the consent form immediately above the permission to allow the hospital to file a medical lien. It's all in the same document. I understand what the consent form says and what the facility agreement says. And what I'm saying is that anybody who goes to this hospital and signs a consent form under whatever circumstances, semi-conscious, conscious, total, they have no way of absolutely having an informed consent about what they are signing. What the hospital is trying to get away with is rather than giving the patient, in this case Mr. Falls, the discount to which they are entitled, this is what they contracted for. It's nothing more than buyer's remorse. And as all the cases that are cited pro and con in these briefs, what it comes down to is that the hospital made this deal. That's the agreement. They have to live by that agreement. If they wanted to contract differently than what the agreement says, they can't. But they didn't. And as a couple of cases said, you could have done it. It doesn't take away from the lien rights. You didn't do it, and here we are. What could be more deceptive than that? What's the essence of the deal between the hospital and the insurer? Not the insurer, the insurer, United, whatever. The essence of the agreement, which we refer to as the facility agreement in the brief, Your Honor, is that when you go to the hospital and the hospital, as in this case, receives payment, they received a payment of about $11,000 along the way from the insurance company, excuse me, $5,000 initially. They made an adjustment of $11,000. They not only received it, they accepted the payment. Yes. But that, under the agreement, Your Honor, is considered payment in full in its entirety. And that agreement says that they cannot proceed against the patient for any excess payment that is due. But what do they do here? They file a lien against the third-party tortfeasor. Why do they do that? Because they want 100% of their bill to which they're not entitled. Why are people paying insurance? Why are they paying these outrageous premiums if they don't get the benefit of this bargain? Nobody told the patient who went into the hospital how they should contract with the insurance company. Well, I'm just factually maybe misunderstanding this, but didn't that facility's agreement say accepting deductibles and co-pays? Excuse me, Your Honor. Is there something about deductibles and co-pays? Yes. And what agreement is that in? I believe that's in 6-7 or 6-8, Your Honor. What agreement? The facility agreement. Okay. So really the facility agreement is between this insurer and the facility provider, which is Silver Cross. And the agreement is, you know, if our insurers come to Silver Cross, you're going to give our insurers a lower rate for services. Yes. Which benefits, obviously, the insurer because they're going to pay less under the contract they have with the patient. That's right. Didn't that agreement say something about co-payments and deductibles that the insured is obligated under his or her contract with the insurance company? There are provisions in the agreement that say that the insured, the patient in this case, is not liable for any excess charges above and beyond the discount, which is paid by the insurance company, except for a co-payment, a deductible, or co-insurance. So are they going after that? Is that what this is about? No, that's not what this is about, Your Honor. Because initially they, meaning Silver Cross, filed the lien for the full amount of the bill, which was in excess of $18,000. $18,000. Then they filed an amended lien. Well, some two years later, they decided to go ahead and file what they call a revised lien as opposed to an amended lien. They filed a revised lien. But what happened in between this is that there was a settlement on behalf of the plaintiff for about $85,000, and their money is tied up because of this lien. So you're saying that's the injury? That is the injury, yes, in part. They're not getting the benefit, and they can't get their money because of the lien. Well, let's talk about that $1,200 whatever lien. Really what happened here is the accident is March 6th. They filed a lien on March 29th, and they tell the patient, you owe $18,000. The notice of medical lien says you owe $18,000. We're serving it on you and the tort visa. You have 45 days to pay. And then after that March 29th, the State Farm actually makes a payment. The hospital accepts some amount from State Farm, $126. And then within the 45 days, United pays their portion of the PPO. Now, those two payments from State Farm as a lien payment and the payment from United as the PPO discounted payment have never been returned. They've been retained to date, correct? As far as I know. And the medical lien was not revised until 2013 to reflect either one of those payments. No. The medical lien, which they call the revised lien, Your Honor, which was done two years later, was in the approximate amount of the deductible or co-pay. That's the $1,200. And Justice Holterich may be confused because in paragraph 22 of your second amended complaint, you've got the wrong date for the revised lien. You say it was March 1st of 2011, but it was actually March 1st of 2013. That is correct. So in this case, the hospital has, they first say to the patient, if your medical provider is entitled to a PPO discount, we'll bill them. And then they accept the payment. And they keep the payment until they figure out whether the settlement is going to be entitled them to more money. And then they have your client agree for the hospital to return the money to the insurance carrier. So in essence, what they're doing is they're rescinding the agreement to accept the payment, discounted payment, and they're exercising, because of buyer's remorse, the second option of getting the non-discounted payment from the tort liaison. But they don't have that option. That is not an option that they have under the terms of the facility agreement. And when Your Honors have an opportunity, and I'm sure you have already, to revisit these sections 6-4, 6-7, and 6-8, it's abundantly clear that this isn't an option. If they wanted to call it an option, if they wanted to say, okay, you'll get the lesser amount and then we can still file the lien for the balance, they could have said that. They never did. This is no lien for the balance. They filed the lien for the full amount from the beginning. Initially. Initially they did. At the end, I would like to point out to the Court, at the beginning of the facility agreement, in Section 2.1B, it states in part that this agreement constitutes a valid and binding obligation of the facility. The facility being Silver Cross, enforceable against the facility in accordance with its terms, except for bankruptcy, insolvency, and some kind of defenses. They are obligated, Your Honors, to this agreement and then to say to a patient… Is the patient a party to that agreement? We believe they are. We believe they are because throughout the facility agreement, every section just about refers to the customer. And the customer is not UnitedHealthcare, the customer is not Silver Cross, the customer is a client such as ours, Mr. Falls and all other people similarly sent to it. This agreement would be absurd to say that the customer, the patient, has no benefit in it because that's how it's worded. It's all for the customer. They can't get around that. They just can't. If I may continue, a couple of other points I would like to address. The question of the lien itself and how the lien was worded, both the revised lien and the initial lien, is a lien upon the claim for the cause of action. It's not a lien that was filed against the person. And the consent form specifically states that the lien will be filed against the person. Our position is that when they went ahead and they filed the lien against the claim of the cause of action, they have waived any right to proceed against the person. Additionally… What person? The person being Mr. Falls in this case. The way the consent form is worded, the lien would have had to have been filed against his person, against him directly. They didn't do that. If you read the language of the lien itself, the lien is filed against the claim or the cause of action, not against the person. They're the scrivener of the document. They wrote it that way, so they should be bound by what they wrote. The same way when they entered into this facility agreement. As Judge Shader, a federal district court judge, said, we were initially in the federal district court genres. We're not reviewing his decision. No, I understand that. But the statement that he makes are the same statements that are in these cases that are cited on both sides. There was a debt. The debt was extinguished because it was paid under the terms of the facility agreement when they got the discount. Therefore, if there's no debt, there's nothing for a lien to attach to. Plain and simple. And if they wanted to change that around, they certainly could have. They could have worded their agreements differently. Thank you. So, the co-deductibles are not part of this, is what you're trying to say. Well, the deductibles come in co-pay and co-insurance, come into place, Your Honor, when they file the revised lien. Right. But that was only subsequent to after we had already filed the federal suit and other proceedings had taken place. I mean, if they were so interested and the lien was valid and it was good, why did they even have to bother filing the revised lien? If they thought they could lien for the full $18,000 in the beginning, which they did, then what was the necessity of going ahead and filing the revised lien two years later? You know why? Because they knew they shouldn't have done it in the first place. They were trying to clean up their act. Okay, let's assume there's not a tort action out there with the fund of money. Okay, there's no third-party tort user out there. This is a straight insured goes to Silver Cross, receives services, and walks out of the hospital hopefully alive. Then the facilities agreement says whatever services the insured received is at a discounted rate and the insurer pays Silver Cross. Now, it seems that that original agreement, the facilities agreement, binds Silver Cross to only that discounted rate to be reimbursed from the insurance company, correct? It says more than that, your honor. That is correct. I'm just getting to the first part of the story. Yes. But isn't there something in the facility agreement that allows Silver Cross to go after the co-pays and deductibles that are applicable to the agreement between the insurance company and the insurer? It does make mention about co-pays and deductibles. Now, could they bill that patient for whatever that amount was? Did they or could they? Could they? Well, under the terms of the agreement, they likely could go ahead and bill for those amounts. But what happens before that, your honor, is that they had a lien for the full amount, for $18,000. Against whom? That was against my client. Correct. And they'd gone ahead and they did that for the full amount of the bill. They should never have done that in the first place. Then they waited two years to decide to file this revised lien, and in between there was litigation and motion practice filed in both the federal and state courts. But you're arguing that the lien they filed was against that fund from the tort user, right? Yes, in part that's right. The money is still tied up, as far as we know, until this day. But what's very important, your honor, in this facility agreement, it's very clear that when they receive the discounted amount from, in this case, UnitedHealthcare Insurance Company, that that is, quote, full payment. They're done. They're through and that they cannot bill for any excess. That's what it says. You can get to the deductible down the road. But what they're trying to do here is to the person who doesn't have counsel and a lien and they get a call from their attorney, say you owe another $16,000, that's fraud. Which has to be paid in 45 days. When Justice Holderidge asked a question, you said, could they bill or did they bill? Did they bill your client for the $1,200 balance after they received the April 18th payment from United? Did your client ever receive a statement saying there was a $1,200 debt? Your honor, I don't recall that they did. I don't recall when I stepped back before I come back again. I don't recall that they did, but I don't want to misspeak. I can tell you it's not in the exhibits attached to any of the papers. Then I follow up my question with another question of you and that is, when does the debt arise to create the right to file a hospital lien? Doesn't the patient have to be advised of the debt? I believe that, well, the way this case is, is that the Silver Cross Hospital takes the position that once they render services to the injured party, that they can then promulgate and send out a lien for those services rendered, irrespective of whether or not they've explained to the patient that there's an agreement out here that says we can't, even though you signed a consent agreement that says we can't. It appears from this record that they filed the lien before they ever submitted a bill. I believe that they did. And that's, you know, and their excuse is, well, that's to protect us, to make sure that we get the full amount. But they knew that the injured person here, Mr. Falls, had insurance with UnitedHealthcare. They knew that they were going to get some type of a payment. They knew that they had a discount agreement with UnitedHealthcare, so they knew they were going to get money. So to send that out immediately was just in order to advance their position that we can go ahead and send out a lien for 100%, knowing full well that they are not entitled to that under an agreement to which they were partially the scrivener and they agreed to. They didn't do it, Your Honors. They could have. They didn't. This is nothing more than buyer's divorce, and they should be held to their agreement. Thank you. All right. Thank you, Mr. Perry. And Mr. Webster? Mr. Webster, I know you want to make your introductions, but I do have a question based on the record. And that is, I'm not sure what page it is in the appendix, but there is a sheet, inventory sheet, generated by Invitex or whatever the billing agency is for the hospital, that shows on April 19th State Farm made a payment directly to the hospital of $126.87. Correct. Why wasn't the hospital lien reduced at that time? There had not been any payment from the health insurer at that time. The reason why that my client had filed the initial lien. Okay. But I'm just asking. It's marked as payment lien. And that's the first payment the hospital received. And that's within that window, that 45-day window. And I'm imagining, okay, how did that happen? Well, I'm guessing the patient got the notice of the lien that says you owe 18 grand. And for some reason State Farm then forwarded a payment that was not subject to the PPO reduction. And credited towards, should have been credited towards the client's account, but it wasn't. And then later, a month later on April 18th, United pays their share, $5,979 that is at the PPO rate. And again, once again, the lien is not reduced. Why not? I don't think the record supports the statement that the amount wasn't credited towards the account. The lien is for the full amount. When they get the $126, that's certainly not the full amount that my client was owed in this case. Now, once United made a payment at that time, my client subsequently amended the lien later on to account for the unpaid, copaid, and deductible at that time. Has Mr. Falls ever gotten credit for the $126.87 that came directly from State Farm to the hospital? From my understanding of the facts, yes. I don't think so, but I'll let you check the math and you can correct me. Regardless, though, when you look at the facts here, is that my client, Silvercross, had filed the initial lien claim. Before the bill. Before the bill in order to protect itself in case there was nonpayment. Because if you look at the provisions of the contract, the contract only between Silvercross and United Health Care, that my client was entitled to be able to bill for its full charges if United determined that the services were not covered. At the time that my client had rendered the services, there's no guarantee that United was going to say that, yes, these were indeed covered. Absolutely. I agree with you. And then they got payment within 45 days on April 18th of 2011, and your client did nothing. Nothing, because they were paid by United. Not the full amount that they're owed. But the lien remained for the full $18,000 when this patient agreed to self-pay $1,200. What your consent form does is it gives the hospital a choice of, is the client's self-pay portion going to be the balance of the PPO discount? Or is the hospital going to be allowed to return or rescind acceptance of the PPO rate and convert the patient into 100% self-pay? I think that's the option for the hospital to do it. But given the allegations and the complaint and the facts here is that the hospital never did return any of the payment. They haven't returned the payment. That's correct. Right. So are they trying to get paid twice? But when you look at the consent form, it allows them to place the lien there. And that's consistent with what Philip Morris says. The People v. Philip Morris case says that whenever you place a lien, you have the option of either going after the money in this separate res, this tort judgment, or alternatively still pursuing a claim directly from the person that owes the money there. That's consistent with what my client did in this case here. But the fact remains is that not at any time have they been paid the full amount that they owed as of what is allowed under the contract, as of what's allowed under the Health Care Services Lien Act. If Mr. Falls had an issue with what was placed on the lien claim, the proper avenue for him to challenge this is by trying to extinguish the lien in a proceeding. He couldn't do that without breaching the consent form. Why not? Because the consent form says, we agree that you can file a medical lien in the full amount. And the minute he did that, he would be breaching the consent form, which is one of your defenses to the breach of contract claim, that he didn't prove he complied. He has complied. The bill went to his carrier. His carrier paid. He has not interfered with your lien. He has not complied because not at one single time has he ever paid his copay and deductible. His performance under the contract is making sure that there's full payment for the services. Regardless of whether you want to look at it as the full $18,000 versus the united amount with the copay, there's no dispute that he's never paid the copay and deductible. He has not performed under the contract, and he's never made one single allegation that he performed. At this point, Silver Cross has a lien for, let's go back. In 2011, before the lien was reduced in 2013, Silver Cross had approximately $6,000, and they had $18,000 tied up. They wanted to be paid twice, didn't they? And they wanted to choose which to keep and which to return, because if the settlement had been smaller and not been enough to cover the full value of the hospital services, then Silver Cross has protected itself to stay with the PPO discounted rates and keep that money if it would be more. I agree with you to the extent that they're not entitled to be able to keep both the united payment as well as the full lien amount, but as soon as they choose to go the route of keeping the united payment and not returning it, that's the route that they have to go. They subsequently amended their lien claim to account for only the unpaid copay and deductible, which was five months before the plaintiff ever filed his case in this matter. How long had the settlement been tied up at that point in time? I want to say it was maybe about 16, 17 months around there. But at the same time, there's no dispute that Mr. Falls still owed some sort of amount, whether it's the copay or deductible versus the full amount. The proper avenue to then take care of that is to adjudicate the lien claim under Section 30 of the Health Care Services Lien Act. Why isn't the proper way to take care of that to resort to the collection process that the consent form allows for the balance due and the PPO amount, rather than a lien for the full amount of charges? I'm not understanding your question, Your Honor. When Silver Cross elected to accept the PPO discounted payment, which took care of the entire debt up to $1,200, why doesn't that cut off their right to maintain the lien for another 16 months tying up the settlement? Because this patient has never realized the $16,000 that should go to him, even now by your revised state. He wouldn't get a single cent until he pays at least the copay and deductible. So it doesn't matter in terms of whether the lien claim is for a greater amount versus that smaller amount. He's not entitled to anything until that lien is extinguished. If you had reduced your lien before the settlement to reflect the payment from United, then the only amount liened would be $1,200 and we wouldn't be. We did amend the lien to be only $1,200, but what I... After the settlement. After the settlement, but my client had filed the lien... Right after the payment on April 18th of 2011, we wouldn't be? I disagree because Mr. Falstell hasn't paid the amended lien claim for the $1,200. What you're saying is if he would pay the lien claim for $1,200, then the third party tort fees or settlement amount is then available to him. That's correct, Your Honor. Right. That's the issue. Are they arguing the $1,200 with you? Have they been arguing that since you revised it? We've still not been paid that amount. Where's the check now? It's still tied up. There's been no payment by Mr. Falls, and there's still this lien claim on his... Where's the check? Is that with the hospital? It's an escrow, I guess, or it hasn't been cashed. I don't know exactly, Your Honor. Because the hospital won't endorse it? Because they still have not been paid the $1,200 that no one disputes? I can't imagine from the arguments here in the briefs that they're arguing the $1,200 isn't owed. They're not disputing that from what I understand. Yeah. But the fact remains they still haven't... What's the problem? My client still hasn't paid that $1,200. That's the issue. Not your client, their client. No, my client has not been paid the copay and deductible that they're... Because the check hasn't been cashed, because you wouldn't sign it, you wouldn't endorse it. Because at that time you were still claiming $18,000. No, my client, when they received the settlement, is that they had a letter saying that whatever you receive from United, that's payment in full. That's all you're entitled to. My client said, no, we're not going to do that. And that's the same type of situation of Watkins v. GMH. They received that check, the settlement check. How much was it then for? Was it pre-revised or post-revised? The settlement check was before the post-revised lien, but my clients never received the settlement check. The fact remains is that there's been no payment of this $1,200. Where did they receive the check for endorsement? Did they not? And refused to endorse it? Because they sent a letter saying that you are owed nothing in this and that you should sign the settlement agreement. My client wasn't sent a check at that time. They've not been sent any payment by Mr. Falls or any representative of Mr. Falls. Because the original, and maybe I'm not understanding the circle we're talking in, but wasn't the original settlement check sent to you for the hospital's endorsement? I believe so, Your Honor. Oh, it was not. Okay. It was to Mr. Falls' attorney. Right. And then he sent a settlement agreement saying you don't owe anything. But didn't the attorney send that check to all the providers? I mean, isn't that usually what's done? I don't believe that was the case in this instance, Your Honor. And that's the issue. So you're maintaining this action because of the $1,200? I mean, you're defending this action because of the $1,200? I mean, we have to defend our action here because that's the plaintiffs are suing my client, so I have to defend it. I don't have a choice of what court I show up in, Your Honor. So, okay, tort fees are settled and there's a check sent, correct? Correct. And it's not sent to the hospital? Right. It's sent to the attorney? That's correct, Your Honor. And there is a hospital lien on file? That's right. Okay, now there was the original one for $18,000, then there was the revised one for it. In effect, the deductible copayment, which the facility agreement said they can go after. That's correct under Section 6.7. Right. And the attorney sends a letter and says, you've been received in full. That's correct, even though that wasn't the case. Was the settlement check, wasn't it made out to all of the debtors? I don't know. We've not seen a copy of this check. It's Mr. Falls' counsel that has the check. All I know is my client has been paid the copay deductible that everyone admits that they're still owed. But you revised that position 16 months after the settlement when the check was first received by Mr. Falls' attorney. There was no resolving the dispute between the two because the hospital wanted the full amount. The facts, I don't know if that's an accurate characterization. It is accurate that the lien was placed for the $18,000. The check was received afterward. There was a united payment in between then. There's no injury to Mr. Falls, though, because he can't get any of those funds until the lien claim is cleared. There's no dispute that there's a valid lien claim, at least as to the $1,200, even if you accept the plaintiff's theory in this instance. He's the cause of his own injury by the fact that he hasn't paid this $1,200. Had he paid this $1,200, we wouldn't be here today. But he didn't pay the $1,200 because it wasn't $1,200 for 18 months. It was $12,000. Isn't that the issue that's being raised here? Until they file the federal action and it would average time to revise the lien. We revised the lien at that time, that's true. But it was also five months before there was any action in this court. But that's the point is that Mr. Falls controlled his own destiny here. He could have paid this. There wasn't any injury that was caused by this. At what point could he have paid it? He could have paid the full balance, the full bill, correct? Okay. And then gone after you for breach of agreement as a third-party beneficiary to bring that $18,000 down to $1,200. Breach of what agreement, though, Your Honor? Because under the patient consent form, he could potentially state a cause of action because he's a party to the agreement. As to the contract between UnitedHealthcare and SilverCross, he doesn't have standing to bring that type of claim. Because there's that explicit provision in the contract that says no third-party beneficiaries. The only way that you can reconcile the language in this contract is to have that provision trumped. Had United and SilverCross intended otherwise, they would have said, except for what's stated in Section 6.8, no third-party beneficiaries. They didn't put that language, though. Which is why I focus on the consent form alone. And you look at what the consent form informs the client, and I'm thinking in terms of whether this is unfair, whether this is an unfair practice. What the client is told is that if your medical carrier is entitled to a PPO discount, you're going to pay the unpaid balance of the PPO discount. What? In addition, though, you're consenting to allow the hospital to file a medical lien for the full amount, which you don't need the consent of the patient to do that, and you're also consenting to let us rescind or return the PPO discounted funds. That's where it becomes unfair. That's where it becomes unfair. Why is the hospital getting that kind of an agreement in the consent form? I disagree with the characterization of the consent form. There's nothing in the consent form that talks about that PPO discount there in that language, at least of the language in terms of the filing of the health care lien, if that's what you're referring to, Your Honor. Okay. We'll maybe agree to disagree on that. But if you go back to the causes of action, you know, the circuit court was correct in dismissing the consumer fraud claim in this instance, you know, for four different reasons. It's that there isn't any deceptive or fraudulent conduct. What Mr. Falls is saying is, well, at the time that Silvercross rendered the services, they should have told Mr. Falls that he doesn't have to pay his bill in full. Silvercross never made such a promise to United or to Mr. Falls that he would not be responsible to pay for the bill in full. It still depended on whether the services were determined to be covered or not. Mr. Falls even would be responsible for the payment. But that was rendered, that was found out pretty shortly after the accident, as a matter of fact, provision of the services. It was, I want to say, within about 30 to 45 days after. That's true. But he's saying that the deceptive comment, at least as what is alleged in the complaint, is at the time that the services are rendered, that Silvercross should have told him that he's not responsible for payment in full. There's no way for Silvercross to be able to make that type of promise. They never made that promise to United because they don't know whether United is going to come back and say that these services are covered or not. And not only by the mere fact that these are emergency services. It could be an instance where Mr. Falls ends up not actually being on United's rolls. A lot of times the health insurers end up revising their roles 30 days after the services. Maybe Mr. Falls' mother was no longer employed with the employer. Maybe the premium wasn't paid. There's a lot of funny things that happen, and that's by health insurers. And so that's why Silvercross did what it did by filing the initial lien claim, is to protect itself. I don't think it's to protect by the initial lien claim. The protection, which everybody says is justified and fine, I think is what happened afterwards. But United paid. But what's the deceptive? In any case, that was no longer an issue. But you have to then look at the allegations of the complaint and then fit it within these causes of action. Where's the deceptive conduct that you can point to? There's no allegation in the complaint. Where's the intent to deceive alleged in the complaint? There's nothing there in the allegations, and that's the basis of why the Circuit Court was correct in dismissing the complaint in those instances. Can I direct your attention to the consent form? And I believe you told me that the consent form does not address the PPO discount. Is that your belief? What I was referring to is that within the paragraph talking about the placement of the lien, Your Honor, where it starts in addition to the hospital. Which is paragraph B. It's about placement of the lien. And it's very hard to read this consent form because there is no punctuation in it, which makes it hard. It says, in the event, this is what I interpret as perhaps the third full sentence. In the event the current medical insurer is entitled to a PPO discount, the patient and or guarantor agrees and is responsible for reimbursement of the PPO discount to the hospital. Okay. I agree that it says that, Your Honor. In the event that the patient or guarantor recovers from a third party, the sums equal to the amount of the entire bill for the hospital rendered services, or equal to the amount of any hospital lien filed under the Illinois compiled statutes. No punctuation. It looks like a new sentence. The patient or the guarantor agree and authorize the hospital to reimburse the medical and or insurance provider for any sums previously paid to the hospital. Before the hospital receiving reimbursement from the patient or third party. It's difficult to read because of the lack of punctuation. And then it goes on. And in addition, the hospital is allowed to file a hospital lien. And it sounds like after the hospital returns the money to United, then the hospital is allowed to file a hospital lien for the non-PPO discounted amount. I think that's where the deception is. Because the patient is not told. You're agreeing to two forms of payment and the hospital has the option to decide which form they're going to accept. The hospital can treat you as an uninsured person by returning the payment. Respectfully, even assuming your theory is correct, there's no allegation in any of the complaints about that theory there. There's an allegation in the complaint that the hospital is not even billing the patient. But then at the same time the complaint acknowledges and admits that it billed the patient. The complaint also admits that there was never a return on the payment in this instance. So there's no fraudulent theory there. There's no breach under the terms of the consent form as what's alleged in the complaint here. And that's where the circuit court was correct in its decision. The complaint alleges that Silver Cross has a policy of doing this. A policy of doing this. That's a conclusion, Your Honor. There's no facts to support it. Respectfully, that concludes your allegation. That's the benefit of oral argument. We get to banter back and forth to test my views and yours. So I appreciate you indulging in this rapid succession of questions. Well, of course, I'm happy to answer any questions that the court has.  Thank you, Your Honor. Thank you, Mr. Retschman. Mr. Byrd. What did... Come on. I'm sorry. So you received a check. No, because neither myself nor my co-counsel, Mr. Alexander, were the attorneys for Mr. Falls. And one of the exhibits shows the letter from Mr. Norum. He was the attorney for Mr. Falls in the underlying PI case. We never received that check. I've just seen the check. I don't have the check. All of the providers have it. My understanding is that that check is still in the possession of Mr. Norum. He is the personal injury attorney for Mr. Falls. The check has never been negotiated or deposited or cleared because of this ongoing dispute concerning the lien. That's just my understanding of it. I have not seen the check, and I haven't seen whether it was ever endorsed or not. But based upon... How many payees are there? Again, my understanding is that one of the payees, of course, is Mr. Brian Falls. The other payee on there is Silver Cross Hospital. And if there are any additional payees, I'm not aware of them. Isn't the transaction pretty standard and simple? You got those payees, and the attorney is trying to get a release of lien from Silver Cross. I mean, they say, give us a release. We don't owe you anything. And they say, wait a minute, no. Yes. So that's the dispute, isn't it? Well, it is the dispute in part. And I think the letter, which is an exhibit to our complaint from Mr. Norum, explains exactly what his position was. And we've carried it out in the file of our litigation with respect to it. The dispute for 16 months was you owe the difference between $18,000 minus the $59,000 or whatever it was paid by United. And then that dispute evolved after the federal lawsuit was dismissed to you owe us the difference between $18,000 and $1,200. That's correct, Your Honor. I would just like to clarify a few dates. Maybe it will bring this better into perspective. The first lien that was filed by Silver Cross was, Your Honor, about March 29th of 2011 for $18,129.50. On April 20th of 2011, United paid the $5,199.11, leaving an approximate balance of $12,803. The personal injury case was settled for $85,000 on May 20th of 2012. And then the revised lien was first filed on March 1st of 2013. In between all of this, client's money is tied up. They're holding it. Another point which has come up in all the arguments is whether or not the hospital was going to give money back to the insurance company. But that has nothing to do with the hospital. That would be the agreement between the insurance company, United Healthcare, and our client. And whether or not they can even have that type of recoupment is yet a separate issue. But they are entitled to do that because the patient has consented to allow that to be done in the consent form, turning the patient into a non-insured patient. Because the patient promises to pay the balance insurance didn't pay. So when they return the insurance payment, what has insurance paid? And it turns the client into a 100% self-pay. If they returned it. And whether or not the consent form has any validity, as I've argued in my opening argument, is another question. Because of the fraud count. Your complaint does allege that the patient went to the hospital because it was a PPO hospital. Yes. It does, trust me. Yes, I'm saying yes. Yes, Your Honor. And then your complaint alleges on information and belief this hospital has a policy for patients who are involved in vehicular accidents or other accidents involving third-party liability. Silver Cross either did not or would not bill the insurance carriers for treatment or would refuse to retain payments received from insurance carriers. And on and on and on. And the facts and the attachments bear out these allegations. So there is no answer on fire. Silver Cross has not admitted or denied if there is this policy. Because the complaint was dismissed based on 2615. Well, and we never got beyond that point with Judge Anderson. After the Second Amendment complaint was dismissed, we decided as counsel for the plaintiff not to engage any further amendments. And we felt that what we had stated were viable causes of action that informed the defendants of our claim. And for all of those reasons, we felt that the judge erred in denying the second amended class action complaint. I would like to conclude. Before you do. Yes. What about his, there's no, he says there's no intent to deceive. And therefore there's no action. Well, the answer to that defendant's contention is that under the Consumer Fraud Act we need to show or allege an intent to deceive. We say we have put that and the intent to deceive in part is that there's a consent form that they give to the patients who come in under injured conditions that say, you know, we can file a lien, you're responsible for the whole bill. That therein lies the intent to deceive because United, excuse me, Silver Cross Hospital certainly knows at that time that they have an agreement with United Healthcare that says something exactly opposite of that. So they intend to deceive the patient who comes in. What does that agreement say opposite of that? The facility agreement? Well, the facility agreement clearly says that once they receive the discounted amount per their contract that they made between United Healthcare and Silver Cross that they've been paid in full, they will not impose a lien, and they will not bill or collect any additional amount. How do you answer his saying that they don't know that? Because they're not obligated unless they're covered services in the contract with the insurer. I'm not quite understanding. Who's not obligated, Your Honor? The insurer is not on there. There may not be covered services under the insurance contract. Well, if there's services that are not covered, it does say that that could remain the obligation of the patient, the injured party, just like a deductible or a copay. So it's a non-covered service. Yes. So how do they know, back to his vermin, that it's not 18,000? I mean, how do they know that? Well, in the first place, they mean Silver Cross, Your Honor? Yes. The Silver Cross would know that because they know that they have a contract with United Healthcare, and they know that they have a discount contract with United Healthcare. As a matter of fact, they likely know they have one with Blue Cross. No, no, no. They don't know that patient X is really an insured, do they? When they come into a hospital, generally speaking, the procedure of this hospital, as soon as you walk in, give me your name, give me your address, or if they're not in a condition to give that, they'll ask somebody who's with them, and let me see your insurance card. Oh, yeah. And do you have insurance? Sure they know it, Judge. No, no. They don't really know. You can print those up. They don't know. They don't know that the person is actually a covered person under that company's policy. Okay. One way is when they ask the questions, they're given the information. Okay. The second way is they present their insurance card. Okay. A third way is if the party had been a patient previously at this hospital, they push the button on the computer, and there it is showing what their insurance is. These are all matters outside of the record. What we do know here, and focusing on Justice Litten's question earlier, we do know that after payment, the hospital learned that he was a covered PPO patient after the payment on April 18th, and paragraph 37 of your second amended complaint alleges that after accepting that PPO discount, they did not bill the patient for the $1,200 balance due. And I think that that shows a little unpleasant intent to hold one payment in hopes that there might be a larger recovery later. And that is what is unfair, I believe. You may speak to that if you would like. No, I agree with you, Your Honor. I don't have anything to say. After 16 months, that's what they did. Yes. So you agree with the theory, or is it your theory, that they can tender back to the insurance company the discounted payment and pursue the full amount of the bill against the tortfeasor fund. That's what I think Justice Wright is saying. I don't. The agreement allows that to be done. The consent form. Is that your theory? My theory is, and per the contract, is they couldn't send that lien out for the full amount in the first place. As far as their ability under the consent form, let's call it a recoupment if I may, that the insurance company can receive the money back from the hospital once they recover from the third-party tortfeasor, that is more of an agreement between the insured, in this case Mr. Falls, and UnitedHealthcare. I mean, where all of a sudden does the insurance company get a recoupment? It's bad enough what they do in the first place with insurance companies, but now they get a recoupment. As a matter of fact, well, it's outside the record. I won't bring it up. Okay, but I'm just trying to see where we're actually going here as to what your theory is. Your theory is that what they did incorrectly was not revising the lien at the time they got the discounted payment. Well, they certainly took their sweet time about it, Your Honor. Well, I mean, yes or no? Well, that's the theory in part. They should never have sent the lien out for $18,000 in the first place. That's part of our allegations. Okay. That's part of our allegations. And in conclusion, I would just like briefly to point out to the court that in the Regala case, there was a subrogation clause that said they could go to the third party. In the Rogers case, there was a right of reimbursement that allowed them to go after the third party. And in the Caban case, they had a provision that said we can first pursue the third party part feature. Why? Because that's what their contract said. That's what they agreed to. But that's not what it says in this case. Thank you. You've both done a very nice job handling an awful lot of questions from a rigorous court. I commend you both. Thank you. Well, and I thank you both as well. Should I thank them? Yes. Oh, I thank you. We're all in a thankful mood. So, anyway, we will take this matter under advisement and get back to you with a written disposition within a short day. We'll now take a short recess. We have one more case on the calendar. Thank you. Okay. This court stands in recess.